Submitted on remand from the Oregon Supreme Court January 9,
vacated and remanded April 26, 2006

## STATE OF OREGON,
*Respondent,*

*v.*

## RICHARD C. ALLEN,
*Appellant.*

## 0103153CR; A121765

134 P3d 976

John H. Hingson III for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Joanna L. Jenkins, Assistant Attorney General, for respondent.

Before Haselton, Presiding Judge, and Armstrong* and Rosenblum,** Judges.

HASELTON, P. J.

* Armstrong, J., *vice* Ortega, J.

** Rosenblum, J., *vice* Richardson, S. J.

**HASELTON, P. J.**

Defendant, who was convicted of driving under the influence of intoxicants, ORS 813.010, appeals, raising numerous assignments of error. We initially affirmed defendant's conviction without opinion, *State v. Allen*, 198 Or App 534, 109 P3d 803 (2005). The Oregon Supreme Court subsequently allowed review, vacated our decision, and remanded the case to us for reconsideration in light of its decision in *State v. Adams*, 339 Or 104, 116 P3d 898 (2005). *State v. Allen*, 339 Or 609, 127 P3d 650 (2005). On remand, we write to address only defendant's arguments concerning whether he was entitled to dismissal of the charge on the ground that his statutory speedy trial rights were violated. We reject defendant's remaining assignments of error without discussion. For the reasons set forth below, we vacate defendant's conviction and remand with instructions for the trial court to reconsider defendant's speedy trial motion.

Defendant's arrest occurred on October 20, 2001, and the citation issued on November 5. An omnibus hearing was scheduled for January 22, 2002, but that hearing was continued at the prosecutor's request because defendant's motions had not yet been filed, nor had the prosecutor yet received them, although defense counsel had served them by mail on January 18.[1] The hearing was rescheduled for April 4. On March 27, the prosecutor filed a motion for a continuance on the ground that he had accepted a different position and another prosecutor needed time to review and prepare the case. In that motion, the prosecutor stated that he had contacted defense counsel "and he does not object to this motion." Trial was scheduled for July 24, 2002.

An omnibus hearing was held on Tuesday, July 16. At that hearing, the prosecutor attempted to call a witness from the Oregon State Police Implied Consent Unit, Massey, to testify concerning the Intoxilyzer machine. Defense counsel objected to Massey's testimony on the ground that he had not been informed that she would be called. The trial court agreed that a violation of the discovery statute had occurred,

---

[1] The record shows that the motions were filed on January 23.

and indicated that the court would either exclude the testimony that day or would continue the hearing. The prosecutor argued that Massey's testimony was vital and suggested that defense counsel be given an opportunity to speak with Massey before her testimony. However, defense counsel countered that he did not want to talk to a witness without an investigator present.

The following exchange then occurred:

"THE COURT:    I'm kind of telling you: Here's your choice, I'm either going to exclude her or we're going to continue this hearing, and I don't know—it doesn't look to me like trial's going to happen next week if I do that.

"[DEFENSE COUNSEL:]   If we're going to—is it your intention to continue the hearing?

"THE COURT:   Well, I'm sort of giving you two the choice. Either we're not going to have any testimony from Ms. Massey today or we're going to continue the hearing.

"[DEFENSE COUNSEL:]   May I suggest if we're going to not have [her], I would imagine that counsel would say we'd like to have a continuation of the hearing.

"THE COURT:   I would imagine.

"[DEFENSE COUNSEL:]   What?

"THE COURT:   I would imagine you're right.

"[DEFENSE COUNSEL:]   And would you grant that if he asked for it?

"THE COURT:   Probably.

"[DEFENSE COUNSEL:]   May I then put an oar in the water to further the judicial economy. *If you're going to order a continuance,* may we at least have some—some direct and some cross with leave to present further direct and cross and further evidence at another hearing, so we can efficiently use as much time as we've got today.

"THE COURT:   *Okay.*"

(Emphasis added.)

The court then heard testimony from Massey and an additional witness. The court ruled on all of the pending

motions except the one pertaining to the Intoxilyzer, after which the following exchange took place:

"THE COURT: That leaves us with the issue of the breathalyzer. *I'm willing to come back over this week to hear any other motions so we don't have to continue the trial* which is apparently set for next week.

"[DEFENSE COUNSEL:] I'm starting a two-day trial tomorrow in Oregon City. I don't have any time until the day that's set for trial in this case.

"THE COURT: *Guess you'd better to file a motion to continue it then.* Which I'm sure won't make Klamath County very happy.

"[DEFENSE COUNSEL:] Well, *you can do an order of continuance,* I believe, yourself, *because you've already said you've ordered a continuance on the request of the state.*

"THE COURT: I—I'm—I'm leaving it up to you, because I don't know for sure that you want to offer more evidence. You may or may not be able to find someone to come in and testify. *I don't know what your status is, so I'm not willing to say continue it today.*

"[DEFENSE COUNSEL:] *Well, I—you said that you were ordering a continuation of this hearing.*

"THE COURT: Right, and *I can do it Friday or Monday.*

"[DEFENSE COUNSEL:] *Well, you know, I have a life.*

"THE COURT: *Right, so if you can't do it then, then I suggest you both just do a joint motion.* I'll be happy to sign it, and we'll go from that. I'm not continuing it on my own motion, though.

"* * * * *

"[DEFENSE COUNSEL:] Is it permissible that we just present to you an order rather than a motion?

"THE COURT: Mm-hmm, sure."

(Emphasis added.) Defense counsel subsequently prepared, and the trial court signed, an omnibus hearing order that disposed of a number of the pending motions and provided: "IT IS FURTHER ORDERED that the State's Motion to Continue the Omnibus hearing to a Mutually Convenient Later Date is ALLOWED."

The continued hearing was next scheduled for October 25, 2002, but was continued at the prosecutor's request due to a scheduling conflict. The continued hearing was then scheduled for December 13, but was continued at the prosecutor's request because one of the witnesses was not available. In each of those instances, the prosecutor indicated that defense counsel had no objection to the requests for continuance. Finally, on January 15, 2003, the hearing was concluded, and defendant's final motion concerning the Intoxilyzer was denied. A pretrial conference was held on February 11, at which the following exchange took place:

"[DEFENSE COUNSEL:]  And then we need a trial date.

"THE COURT:   Okay, I'll set a trial date.

"[DEFENSE COUNSEL:] May I have any input whether—what it's going to be as far as calendar problems?

"THE COURT:   Of course. Just pick a month.

"[DEFENSE COUNSEL:] When is the first time that going to be available for the court; where should I start looking?

"THE COURT:   Well, the very—you know, I can't tell you, but I could set it any time. I mean, I set these things. Whether they go or not is another story. So tell me when you'd like to have it, and I'll arrange for it to be then.

"[DEFENSE COUNSEL:] How about the week of April 21st?

"THE COURT:   April 21st. It just so happens that I have scheduled a giant medical malpractice case that week, so if you want it the week before, it'll be okay, or it could be May 28th.

"[DEFENSE COUNSEL:]   May 28th looks just fine."

On May 28, 2003, defendant filed a motion to dismiss on statutory speedy trial grounds. However, the record contains no indication that the court ever ruled on that motion. The case went to trial on May 28, and defendant was convicted.

Defendant filed a notice of appeal on June 16, 2003. In his opening brief, defendant assigned error to the trial court's denial of his motion to dismiss on statutory speedy

trial grounds. Defendant's assignment of error noted that, on October 22, 2003—nearly five months after the trial and over four months after the notice of appeal was filed—the trial court had entered an order purporting to deny the speedy trial motion. Although the Oregon Judicial Information Network shows that an "Order of Denial Speedy Trial" was signed by the trial judge on October 20, 2003, and entered on October 22, 2003, the appellate record does not include that order.

■■ Because we have an obligation *sua sponte* to determine our jurisdiction to address claims of error, as well as preservation of error,[2] we must first determine the significance and effect of the October 22, 2003, order. Generally speaking, a trial court loses jurisdiction to act in a criminal case once a notice of appeal has been filed. *See generally* ORS 138.185(2); ORS 19.270 (trial court retains jurisdiction over only certain matters after notice of appeal has been filed); *State v. Etchison*, 142 Or App 396, 402, 921 P2d 1333 (1996), *rev den*, 324 Or 654 (1997) (trial court did not have jurisdiction to enter order after notice of appeal was filed); *State v. Price*, 92 Or App 669, 671 n 1, 759 P2d 1130 (1988) (trial court did not have jurisdiction to rule on pending suppression motion when the state had taken an interlocutory appeal of the court's order granting a different motion to suppress). The order entered by the court on October 22, 2003, does not appear to fit within any of the exceptions to this general rule. *See, e.g.*, ORS 138.083 (sentencing court may correct certain types of errors in a judgment while appeal is pending). Thus, the trial court lacked jurisdiction to enter that order.

That does not, however, conclude the matter. The fact that the October 22, 2003, order was a nullity does not preclude our consideration of defendant's speedy trial arguments. The trial court, by proceeding to trial without expressly ruling on defendant's pending speedy trial motion, necessarily, albeit implicitly, denied that motion. The court could not have proceeded—and ultimately entered a judgment of conviction—otherwise. That *de facto* denial, of course, antedated the filing of the notice of appeal and is subject to our review.

_____

[2] *See State v. Wyatt*, 331 Or 335, 345-47, 15 P3d 22 (2000).

■■     We proceed to the merits of defendant's arguments. ORS 135.747 provides:

> "If a defendant charged with a crime, whose trial has not been postponed upon the application of the defendant or by the consent of the defendant, is not brought to trial within a reasonable period of time, the court shall order the accusatory instrument to be dismissed."

In *Adams*, the court summarized the case law interpreting and applying that statute as follows:

> "For purposes of ORS 135.747, a 'reasonable period of time' is 'such length of time as may reasonably be allowed or required having regard to attendant circumstances.' *State v. Emery*, 318 Or 460, 467, 869 P2d 859 (1994) (quoting *State v. Jackson*, 228 Or 371, 377, 365 P2d 294 (1961)). The 'attendant circumstances' include the circumstances that cause delay, *i.e.*, the reasons for delay. *State v. Johnson*, 339 Or 69, 88, [116 P3d 879] (2005)."

339 Or at 110. In *Adams*, the court held that a statement by a prosecutor in moving for a continuance that the defense attorney "does not object to this reset request" does not mean that a defendant has consented to a delay: "It conveys no message that the defendant either joins in the motion or waives any rights that he has that are affected by the motion." *Id.* at 109. Thus, at the outset, we reject the state's arguments (made before the court decided *Adams*) that defense counsel's *failures to object* to the continuances in this case must be construed as consent to the delay. We thus examine the "attendant circumstances" surrounding the delays in the present case to discern whether the delay was unreasonable for purposes of ORS 135.747.

Defendant asserts that at least 13 months of the nearly 19-month delay from the time he was charged (November 5, 2001) until the time he was tried (May 28, 2003) was attributable to the state. Defendant does not, however, describe in any detail exactly which portions of the time before trial he attributes to state-caused delay.[3] We therefore attempt to do so.

---

[3] As explained below, we conclude that, depending on the trial court's resolution of certain matters on remand, the length of delay attributable to the state was either approximately 11½ months or approximately 15 months. *See* 205 Or App at 229.

The 78-day interval between the charging, November 5, 2001, and the omnibus hearing, January 22, 2002, is attributable to the state. *See State v. Brunoe*, 204 Or App 749, 753, 131 P3d 743 (2006) (attributing similar delay to state). However, the omnibus hearing was postponed on January 22, 2002, because defendant's motions had not yet been filed. Given that circumstance, the postponement of the omnibus hearing, from January 22 until April 4—a period of 72 days—is attributable to defendant. On April 4, the case was postponed until July 16, 2002, at the request of the state due to staffing issues in the district attorney's office. That delay of 103 days is attributable to the state.

We defer, for the moment, the discussion of what occurred between July 16 and October 25, 2002.

The postponement of the continuation of the omnibus hearing from October 25, 2002 to December 13, 2002—a period of 49 days—was due to the prosecutor's scheduling conflict. The further postponement of the continuation of that hearing from December 13, 2002 to January 15, 2003—an additional 33 days—was due to the unavailability of a prosecution witness. Both of those delays, as well as the 27 days that elapsed between the conclusion of the omnibus hearing on January 15, 2003, and the pretrial conference on February 11, are attributable to the state.

At the pretrial conference, the court allowed defense counsel to choose any trial date, and defense counsel suggested the week of April 21, 2003, for trial. The trial court already had a trial scheduled for that week and countered by suggesting the week of April 14 or May 28. Defense counsel, without explanation, chose the later of those two dates. Accordingly, we attribute the time between February 11, 2003 and April 14, 2003—62 days—to the state, as April 14 was the first specific trial date that the court offered. Conversely, the delay from April 14, 2003 to May 28, 2003—44 days—is attributable to defendant. *See generally State v. Schneider*, 201 Or App 546, 552, 120 P3d 16 (2005), *adh'd to on recons*, 204 Or App 710, 131 P3d 842 (2006) (concluding that defendant consented to delay under similar circumstances); *State v. Peterson*, 183 Or App 571, 574, 53 P3d 455 (2002) (same).

Thus, we conclude that, aside from the delay between July 16 and October 25, 2002, which we discuss in detail below, the state was responsible for 352 days of delay, or 11½ months. In *Schneider*, we held that a delay of 12 months and nine days in a DUII case was not unreasonable, in light of the reasons for the delay, *i.e.*, lack of judicial resources. 201 Or App at 575. *Compare State v. Harman*, 179 Or App 611, 623, 40 P3d 1079 (2002) (delay of 15 months attributable to state was "unreasonable" under ORS 135.747 where "no good explanation" for the delay was provided).[4] In *State v. Davids*, 339 Or 96, 101, 116 P3d 894 (2005), also a DUII case, the court held that a delay of 11½ months before a warrant was served was unreasonable in light of the trial court's conclusion that "the delay was the product of simple neglect."

Here, unlike in *Davids*, the delays described above do not appear to have been caused by "neglect," "simple" or otherwise. Rather, those delays were the product of the type of scheduling issues that courts and litigants face regularly—delays due to scheduling conflicts by the courts and counsel, the unavailability of witnesses—and, in one instance, a change in personnel at the District Attorney's office. Thus, this is not a case in which we would deem an 11½ month delay, in itself, to be "unreasonable" for purposes of ORS 135.747.

Given that conclusion, the application of ORS 135.747 in this case depends on the proper characterization of the delay that occurred between July 16 and October 25, 2002. If that time is entirely attributable to the state, the delay would be approximately 15 months, which, in the circumstances presented here, would be "unreasonable" for purposes of ORS 135.747. Conversely, if that time (or virtually all of that time) is attributable to defendant, the delay would

---

[4] A number of cases, including *Harman*, refer to the Standards of Timely Disposition adopted by the Oregon Judicial Conference in 1990, which indicate that 90 percent of all misdemeanors such as DUII should be adjudicated within 90 days, 98 percent within 180 days, and 100 percent within a year. Thus, the courts have often treated one year as a benchmark of sorts in misdemeanor cases in determining reasonableness of a delay under ORS 135.747. *See, e.g., State v. Emery*, 318 Or 460, 471 n 17, 869 P2d 859 (1994); *State v. Hilton*, 187 Or App 666, 673, 69 P3d 779 (2003), *rev den*, 336 Or 377 (2004).

be less than a year and would not be deemed "unreasonable" under these circumstances.

Although the omnibus hearing began on Tuesday, July 16, 2002, it was continued, as described above. *See* 205 Or App at 221-23. Defendant asserts on appeal that the continuance of the omnibus hearing was a "choice" made by the prosecutor—and suggests that the delay must be attributed to the state because to do otherwise would be to "reward" the state "for violating the law," *viz.*, the discovery violation. Polemics aside, defendant's characterization of which party was responsible for the critical delay is hardly self-evident.

As previously recounted, the trial judge did find a discovery violation. In the ensuing colloquy, the court presented options for remedying that violation to both the defense and the prosecution. Defense counsel speculated that the prosecutor would prefer a continuance and asked if the court would grant it, to which the court replied, "probably." Later in the proceeding, the court made it clear that it wished to continue the hearing within the following few days so that the trial, scheduled for the following week, would not need to be rescheduled. Defense counsel had a conflict for the following two days—Wednesday and Thursday—but, when the court suggested Friday or Monday, defense counsel refused those dates on the ground that "I have a life."[5] The court responded that, if counsel wanted a longer delay, the court would entertain a "joint motion" from both prosecution and defense, and agreed that it could be presented as part of an order rather than as a motion. Defense counsel then prepared and submitted an order to the court for signature, which stated that the "*State's* Motion to Continue the

---

[5] Appellant's brief erroneously describes the pertinent sequence of events:

"[Defense counsel] was scheduled to begin a two day trial in Oregon City the next day (which was a Thursday) after the motions hearing. Judge Crain offered to have the motion hearing continued to Friday (the second day of the two day trial defense counsel was obliged to attend) or the next Monday. * * * In frustration, defense counsel stated 'Well, you know, I have a life.' "

As noted previously, the omnibus hearing occurred on July 16, 2002, which was a Tuesday. The next two days—the days that defense counsel was scheduled to be in trial in Oregon City—were Wednesday and Thursday, not, as appellant's brief states, Thursday and Friday.

Omnibus hearing to a Mutually Convenient Later Date is ALLOWED." (Emphasis added.)

Given those circumstances, it is unclear, as a factual matter, how much of the delay between July 16 and October 25, 2002, is attributable to which party. At the very least, six days of that delay—those days that the trial court was willing to continue the case on its own motion to allow defense counsel to prepare for Massey's testimony—must be attributed to the state. However, it is unclear whether the balance of the delay beyond that time is properly attributed to (1) the state, as a continuing result of the discovery violation; (2) defendant, because of defense counsel's unwillingness to appear for a continuation of the omnibus hearing on Friday, July 19, or Monday, July 22, before the scheduled July 24 trial date; or (3) either the state or defendant because of reasons attributable to either party that prevented the scheduling of a "mutually convenient" date for continuing the omnibus hearing, until October 25, 2002.

We conclude that, given the procedural and factual posture of this case, it is appropriate to remand so that the trial court can determine the reasonableness of the delay—and, in particular, whether defendant caused or consented to some portion of the delay between the July omnibus hearing and the October postponement—in the first instance. That is so for two related reasons. First, given the trial court's *de facto* denial of defendant's speedy trial motion, we cannot discern how, if at all, the trial court allocated responsibility for the July-October delay. Second, the law governing the proper application of ORS 135.747 has evolved considerably since this matter was before the trial court.[6]

Accordingly, we remand to the trial court to determine, pursuant to ORS 135.747, the extent to which the delay between July 16 and October 25, 2002, is attributable to either or both of the parties and, based on that determination, to decide whether defendant was brought to trial "within a reasonable period of time." Should the trial court conclude that defendant was not brought to trial within a reasonable time, it should proceed to determine, as described

---

[6] *See, e.g., Johnson, Davids, Adams,* and *Schneider.*

in *Johnson*, 339 Or at 90, whether it should have continued rather than dismissed the case despite the unreasonable delay. *See State v. Hickey*, 204 Or App 704, 708-09, 131 P3d 853 (2006) (remanding, under similar circumstances, for the court "to make the required determination under ORS 135.750" in the first instance). In the event that the trial court concludes that defendant's motion should be granted, it shall dismiss the charge. In the event that the trial court denies defendant's motion, it shall order defendant's conviction to be reinstated subject to his right of appeal.

Vacated and remanded.