Submitted May 30, affirmed October 17, 2012

STATE OF OREGON,
*Plaintiff-Respondent,*
*v.*
TERRELL JEROME PENNEY,
*Defendant-Appellant.*

Multnomah County Circuit Court
090733026; A145722

288 P3d 989

Peter Gartlan, Chief Defender, and Anne Fujita Munsey, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, Anna M. Joyce, Solicitor General, and Patrick M. Ebbett, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Brewer, Judge, and Sercombe, Judge.

ORTEGA, P. J.

## ORTEGA, P. J.

Defendant appeals a judgment of conviction for unlawful possession of cocaine, ORS 475.884, and raises three assignments of error. We reject without discussion his second and third assignments of error, in which he asserts that the trial court erred when it instructed the jury that it could find him guilty by a nonunanimous verdict and when it accepted the jury's nonunanimous verdict. *See State v. Bainbridge*, 238 Or App 56, 59, 241 P3d 1186 (2010). We write only to address his first assignment of error, in which he contends that the trial court erred in denying his motion to suppress evidence obtained as the result of an inventory search of his car. He argues, first, that, because "the Portland Police Bureau Policy and Procedure is facially invalid, the search of defendant's vehicle was not a valid administrative inventory" and, second, that the inventory search of his car was invalid "because officers were motivated by a desire to search." (Boldface omitted.) According to defendant, the search of his car violated his constitutional right to be free from unreasonable searches and seizures.[1] The state responds that the motion to suppress was properly denied; it also cross-assigns error to the trial court's ruling that the Portland Police Bureau's policy "for towing uninsured vehicles unconstitutionally provided police with discretion whether to tow such a vehicle." On review for errors of law, *State v. Keady*, 236 Or App 530, 532, 237 P3d 885 (2010), we conclude that the motion to suppress was properly denied, and, accordingly, we affirm.

For context, we begin by setting forth several relevant sections of the Portland Police Bureau "Policy and Procedure" statement, which is at issue in this case. Under the Policy and Procedure, "a vehicle shall be towed when

---

[1] Article I, section 9, of the Oregon Constitution provides:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

Although defendant summarily asserts that the search of his vehicle violated his state and federal constitutional rights, the arguments in his brief focus on the requirements of Article I, section 9. In the absence of any developed argument regarding the federal standards, we discuss only the state standards herein.

*** [the d]river has been cited for Driving Uninsured under ORS 806.010." However, the Policy and Procedure also provides, generally, that, unless

"there is a need to protect the vehicle or avoid a hazard to other drivers, a vehicle should not be towed when:

"1. Vehicle is lawfully parked, the driver is arrested and the driver or owner consents to allow the vehicle to be locked and remain where it is reasonably safe to do so.

"2. Driver is arrested and driver or owner consents to allow a passenger in the vehicle to lawfully continue to drive the vehicle.

"3. Driver is cited for driving while suspended or without a license if a passenger in the vehicle could lawfully continue to drive the vehicle.

"4. There would be an undue hardship or risk for the occupants (i.e., young child or disabled person in the vehicle)."

In the section that specifically deals with tows for driving uninsured, the Policy and Procedure provides that "[a] member shall tow a vehicle when the member reasonably believes that the vehicle's operator has no insurance and cites the operator for Driving Uninsured." Furthermore, "[a]ny time a member issues a citation for Driving Uninsured, they will tow the vehicle, except where the vehicle is specifically equipped for and operated by a handicapped driver or when a supervisor approves an exception." Officers "may also cite for Fail to Carry Proof of Insurance (ORS 806.012), but this does not mandate a tow."

With that background in mind, we now turn to the relevant facts, which are not disputed. Laws and Livingston, two Portland police officers who were members of a unit that patrols areas with high levels of gang activity, were on patrol. After they observed defendant's car coming toward them and saw that the car's windows appeared to be tinted more darkly than is legal, they made a u-turn and began to follow closely behind defendant's car. A check of the car's license plate revealed that one of the car's registered owners had been denied a concealed weapons permit because of a "history of gang involvement." After observing the car

commit two more traffic infractions, the officers activated the overhead lights of their patrol car and initiated a traffic stop. Defendant's car stopped at an angle and at a distance from the curb that the officers believed created a traffic hazard.

After initiating the traffic stop, Laws approached defendant (who was the driver) and asked for his driver's license and proof of insurance. Defendant produced two expired insurance cards, each from a different company. Laws asked defendant if there were any weapons in the car and asked several times if he could search the car for weapons. Defendant stated that he had no weapons but declined to allow a search of the car. The officers conferred and decided to "tow the vehicle for no insurance" and because it was a traffic hazard. Because the insurance cards provided were both expired, the officers believed defendant was driving without insurance. They did not call either of the insurance companies nor did they give defendant time to call someone to assist him in providing proof of insurance.

Livingston explained that he would choose how to write the citation depending on whether he intended to tow the vehicle: "If I'm going to tow it, I cite for 010, Driving Uninsured. If I'm not going to tow it, I cite for Fail to Carry Proof." He further explained that

> "the reason I would cite 012 [failure to carry proof] is kind of some of these hardships that were listed. Like maybe I see there's a child in the car, somebody disabled, and I don't want to take their only means of transportation away from them. I may choose to cite 012, fail to carry proof which does not require me to tow the vehicle."

According to Livingston, when he issues a citation for failure to carry proof, he has the driver "leave the vehicle where it is and have someone come and get it when they get valid insurance."

On this occasion, after the officers decided to tow defendant's car because he was driving uninsured, Laws performed an inventory of its contents. After discovering cocaine in the course of that inventory, the officers placed defendant under arrest, searched him, and discovered

additional evidence. Defendant later made incriminating statements as well.

Before trial, defendant filed a motion to suppress all of the evidence discovered as a result of the inventory and argued that the Portland Police Bureau Policy and Procedure impermissibly allows officers to exercise discretion in determining whether to tow a vehicle. The state filed a response, and, after a hearing, the court denied defendant's motion. It found that, after the stop, defendant was unable to produce proof of insurance. According to the court,

> "[t]he officers are not required to offer the defendant additional time, or a chance to make a phone call, or a chance to have the papers brought from home, prior to concluding that it was more likely than not that the defendant failed to have, or failed to carry proof of having, insurance. At that point the officers could reasonably have cited the driver for [either driving uninsured or failure to carry proof of insurance]."

Furthermore, because a citation for driving uninsured required officers to tow defendant's car while a citation for failure to carry proof of insurance would not, the court reasoned that a "decision about which citation to issue becomes a decision about whether to tow or not, and thus, a decision about whether an inventory is 'required' or not." According to the trial court, "[m]erely moving the discretion to tow up one level (to the choice between interchangeable offenses rather than a choice between towing and not towing) does not satisfy the Constitutional requirement for non-discretionary inventory search policies." The court nevertheless concluded that suppression was not required because the car was parked in a manner that impeded traffic and, therefore, the officers would have ordered a tow and the inventory would have occurred regardless. Accordingly, the court denied defendant's motion. At the subsequent trial, the jury found defendant guilty of possessing cocaine.

We turn first to the parties' contentions regarding the validity of the Policy and Procedure regarding vehicle tows. Specifically, defendant agrees with the trial court that the policy is unconstitutional because it allows officers

to choose whether to cite a driver for driving uninsured (requiring that the vehicle be towed) or for failure to carry proof of insurance (not requiring a tow). According to defendant, because "the decision of which citation to issue amounts to a decision whether to tow the vehicle and consequently, whether the vehicle will be inventoried," the Policy and Procedure unconstitutionally "provides for unlimited discretion regarding whether to inventory a vehicle whenever a driver fails to provide proof of insurance." The state, on the other hand, argues that the trial court "erroneously applied the rule that prohibits discretion in deciding whether and in what manner to *inventory* a vehicle to an officer's decision to *impound* a vehicle." (Emphasis in original.) The state asserts that, contrary to the trial court's conclusion, "[a]n officer's decision to impound a vehicle, unlike an officer's decision whether and in what manner to conduct an inventory, *may* involve the exercise of discretion." (Emphasis added.) We agree with the state.

Where a vehicle is lawfully taken into administrative custody, such as when police impound a car, an inventory may be conducted "pursuant to a properly authorized administrative program, designed and systemically administered so that the inventory involves no exercise of discretion by the law enforcement person directing or taking the inventory."[2] *State v. Atkinson*, 298 Or 1, 10, 688 P2d 832 (1984). Furthermore, the person conducting the inventory must not deviate from the "established policy or procedures of the particular law enforcement agency." *Id.* Defendant contends that, for an inventory to be constitutionally permissible, officers may not have discretion in determining whether or not to impound a particular vehicle. That view, however, is not consistent with our case law.

In *State v. Gaunce*, 114 Or App 190, 193, 834 P2d 512 (1992), we considered a police policy that required "an officer to inventory every vehicle that is towed," but that left to an officer's discretion whether or not the vehicle would be towed "in the first place." We stated that an officer's

---

[2] As the state notes, ORS 809.720(1)(d) authorizes police to impound a vehicle if they have probable cause to believe that the driver committed the violation of driving uninsured.

decision to impound a vehicle may involve the exercise of discretion. *Id.* at 195. However, the officer's suspicion of criminal activity may not play a "part in the discretion that he exercises when deciding whether to impound a car." *Id.*

Later, in *State v. Komas*, 170 Or App 468, 13 P3d 157 (2000), we again considered the issue of officer discretion in the context of a decision to impound property. There, after the defendant was arrested and placed in handcuffs, he asked to give a friend the shoulder bag that he was wearing. However, the officer declined the defendant's request and, when he later inventoried the shoulder bag pursuant to the city's inventory policy, found marijuana inside. The defendant contended that, because the inventory policy did not "contain language that limit[ed] an officer's discretion about whether to take custody of the property [of an arrested person] or release it to a third party, the ordinance [was] invalid." *Id.* at 476. We rejected that assertion and instead concluded that an officer may exercise discretion in deciding whether to impound a defendant's property. Citing *Gaunce*, we reasoned that "inventory policies govern the examination of property and not its seizure." 170 Or App at 478. Therefore, an inventory policy is not invalid because it fails to limit an officer's discretion regarding whether to release seized property to a third party or to take that property into custody.[3]

Thus, as explained in *Gaunce* and *Komas*, unlike the decision whether and in what manner to conduct an inventory, an officer may exercise discretion in determining whether to impound a vehicle. It follows that the Policy and Procedure is not invalid because it permits an officer to choose to cite a driver for failing to carry proof of insurance, in which case a tow is not required. Although that decision regarding what citation to issue in turn gives an officer discretion regarding whether the vehicle at issue will be impounded, such discretion is constitutionally permissible. For that reason, we agree with the state that the trial court's conclusion that the Policy and Procedure failed to satisfy the

---

[3] We note that defendant acknowledges our conclusion in *Komas* that "inventory policies govern the examination of property and not its seizure." 170 Or App at 478. However, he asserts that that case was wrongly decided. We decline defendant's invitation to revisit our holding in that case.

constitutional requirement "for non-discretionary inventory search polices" was incorrect.

Defendant nonetheless argues that the inventory was "unconstitutional as applied, because the officer's decision to cite defendant for driving uninsured and tow the vehicle was motivated by a desire to search the vehicle." The state initially responds that defendant failed to preserve that contention below. According to the state, before the trial court, defendant "only argued that the officers were granted too much discretion as to whether to tow or not."

"[A]n issue, to be raised and considered on appeal, ordinarily must first be presented to the trial court * * *." *Peeples v. Lampert*, 345 Or 209, 219, 191 P3d 637 (2008); *see* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *."). The policies behind the preservation requirement are "prudential in nature." *Peeples*, 345 Or at 219. In particular,

> "[p]reservation gives a trial court the chance to consider and rule on a contention, thereby possibly avoiding an error altogether or correcting one already made, which in turn may obviate the need for an appeal. Preservation also ensures fairness to an opposing party, by permitting the opposing party to respond to a contention and by otherwise not taking the opposing party by surprise. Finally, preservation fosters full development of the record, which aids the trial court in making a decision and the appellate court in reviewing it."

*Id.* (citations omitted). "Short-hand references, if they are adequate to serve [the policies underlying the preservation requirement], may be sufficient to preserve an issue for appellate review." *State v. Haynes*, 352 Or 321, 335, 284 P3d 473 (2012). However, to properly preserve an issue for review, a party's argument before the trial court must be such that "the other parties and the court would understand [the arguing party to be referencing] a particular legal or factual argument," and also should permit other parties and the court to understand the "essential contours of the full argument." *Id.*

Here, in the memorandum supporting his motion to suppress, defendant asserted that the tow of his car was unconstitutional because the operative tow policy "allows complete discretion about whether to tow or not to tow." In other words, he asserted that the tow policy was invalid because it did not sufficiently limit the officers' discretion. In his memo, defendant also referenced *Gaunce* and stated that because officers sought defendant's consent to search the car, they therefore specifically and improperly singled out defendant's car for "special searching attention." (Internal quotation marks omitted.) During the hearing on the motion, defense counsel indicated that the fact that an officer "may have been looking for evidence of a crime when he conducted an inventory would not by itself negate its lawfulness if the inventory would have been conducted in any event." However, defense counsel pointed out that officers cannot use an inventory as an alternate method for investigating a crime and that officers "really did put pressure on [defendant] to consent to a search in regards to a weapon [they were] looking for[.]" Accordingly, defense counsel stated that he believed that was "an issue" in the case. In our view, defense counsel's argument before the trial court was sufficient to preserve his contention on appeal that the officers' decision to tow defendant's car was improperly motivated by a desire to search.

The state next contends that, even if defendant preserved his argument regarding the officers' motivation to tow the vehicle, it fails on the merits because it is controlled by the trial court's factual findings. We agree with the state in that respect.

As noted, "[a]lthough an officer may suspect criminal activity when he decides to have a car impounded, his suspicions can play no part in the discretion that he exercises when deciding whether to impound a car." *Gaunce*, 114 Or App at 195. However, the fact that an officer may have "been looking for evidence of a crime when he conducted [an] inventory would not, by itself, negate its lawfulness, if 'the inventory would [have been] conducted in any event.'" *Id.* at 194-95 (quoting *Atkinson*, 298 Or at 11 n 7) (second brackets in *Gaunce*). Furthermore, "[w]hat actually transpired is a question of fact for the trial court * * *." *Ball v. Gladden*,

250 Or 485, 487, 443 P2d 621 (1968). If there is evidence to support the trial court's factual findings, "they will not be disturbed by this court." *Id.* As well, "[i]f findings are not made on all such facts, and there is evidence from which such facts could be decided more than one way, we will presume that the facts were decided in a manner consistent with the [trial court's] ultimate conclusion * * *." *Id.* In view of those standards, whether an officer's decision to impound a vehicle was influenced by a desire to search is a factual determination regarding which we must defer to the trial court. *See Gaunce*, 114 Or App at 196 (observing that the appellate court lacks the authority to make a finding on that issue).

Here, the trial court found as fact that "the manner in which the vehicle was parked (or more accurately, stopped) left it in a location where it was an impediment to traffic." Accordingly, given the hazard that the car created, the court found that the officers would have ordered it towed regardless of whether they cited defendant for driving uninsured or for failure to carry proof of insurance and, therefore, "the inventory would have occurred regardless[.]" Defendant does not assert that that finding is not supported by the record, and it is, in fact, supported by the testimony of the officers who stated that they made the decision to tow defendant's car because of "no insurance" and because "it presented a hazard in the roadway." Livingston also testified that, when he cites someone for driving uninsured, the car is towed and, when he cites a driver for failure to carry proof of insurance, the driver must leave the vehicle where it is until he or she obtains insurance. Furthermore, the trial court implicitly found that the officers did not impound defendant's car because of a desire to search it. As noted, to the contrary, the court concluded that suppression was not required in this case based on its finding that officers towed defendant's car because it presented a traffic hazard. *See Ball*, 250 Or at 487 (where there is evidence from which a fact could be decided more than one way, we presume that the fact was decided in a manner consistent with the trial court's ultimate conclusion). Accordingly, we reject defendant's contention that the inventory was unconstitutional because, as a factual matter, officers were improperly influenced by

a desire to search when they decided to impound his car. *Cf. Gaunce*, 114 Or App at 196 (remanding for findings where the trial court failed to make a finding on the "critical issue" of whether the officer "would have had defendant's car impounded, regardless of his suspicions").

In view of the foregoing, the trial court did not err in denying defendant's motion to suppress.

Affirmed.